Justice Kennedy,
concurring.
The separation-of-powers design in the Constitution is implemented, among other means, by Article IIFs ease-or-controversy limitation and the resulting requirement of standing. See, e. g., Lujan v. Defenders of Wildlife, 504 U. S. 555, 559-560 (1992). The Court’s decision in Flast v. Cohen, 392 U. S. 83 (1968), and in later cases applying it, must be interpreted as respecting separation-of-powers principles but acknowledging as well that these principles, in some cases, must accommodate the First Amendment’s Es *616 tablishment Clause. The Clause expresses the Constitution’s special concern that freedom of conscience not be compromised by government taxing and spending in support of religion. In my view the result reached in Flast is correct and should not be called into question. For the reasons set forth by Justice Alito, however, Flast should not be extended to permit taxpayer standing in the instant matter. And I join his opinion in full.
Respondents’ amended complaint challenged the religious nature of national and regional conferences that promoted President Bush’s Faith-Based and Community Initiatives. See App. to Pet. for Cert. 73a-77a. To support the allegation respondents pointed to speeches given by the President and other executive officers, speeches with religious references. Id., at 73a~76a. The complaint relies on respondents’ taxpayer status as the sole basis for standing to maintain the suit but points to no specific use of Congress’ taxing and spending power other than general appropriations to fund the administration of the Executive Branch. Id., at 71a-73a.
Flast established a “narrow exception” to the rule against taxpayer standing. Bowen v. Kendrick, 487 U. S. 589, 618 (1988). To find standing in the circumstances of this case would make the narrow exception boundless. The public events and public speeches respondents seek to call in question are part of the open discussion essential to democratic self-government. The Executive Branch should be free, as a general matter, to discover new ideas, to understand pressing public demands, and to find creative responses to address governmental concerns. The exchange of ideas between and among the State and Federal Governments and their manifold, diverse constituencies sustains a free society. Permitting any and all taxpayers to challenge the content of these prototypical executive operations and dialogues would lead to judicial intervention so far exceeding traditional boundaries on the Judiciary that there would arise a real *617 danger of judicial oversight of executive duties. The burden of discovery to ascertain if relief is justified in these potentially innumerable cases would risk altering the free exchange of ideas and information. And were this constant supervision to take place the courts would soon assume the role of speech editors for communications issued by executive officials and event planners for meetings they hold.
The courts must be reluctant to expand their authority by requiring intrusive and unremitting judicial management of the way the Executive Branch performs its duties. The Court has refused to establish a constitutional rule that would require or allow “permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.” Garcetti v. Ceballos, 547 U. S. 410, 423 (2006); see also Cheney v. United States Dist. Court for D. C., 542 U. S. 367, 382 (2004) (noting that “separation-of-powers considerations should inform a court of appeals’ evaluation of a mandamus petition involving the President or the Vice President” and that “mandamus standards are broad enough ... to prevent a lower court from interfering with a coequal branch’s ability to discharge its constitutional responsibilities”). In the Article III context the Court explained that concerns based on separation of powers “counselled] against recognizing standing in a case brought ... to seek a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties.” Allen v. Wright, 468 U. S. 737, 761 (1984).
The same principle applies here. The Court should not authorize the constant intrusion upon the executive realm that would result from granting taxpayer standing in the instant case. As Justice Alito explains in detail, the Court’s precedents do not require it to do so. The separation-of-powers concerns implicated by intrusive judicial regulation of day-to-day executive operations reinforce his interpretation of Flast’s framework. Cf. Allen, supra, *618 at 761, n. 26 (relying “on separation of powers principles to interpret the ‘fairly traceable’ component of the standing requirement”).
It must be remembered that, even where parties have no standing to sue, members of the Legislative and Executive Branches are not excused from making constitutional determinations in the regular course of their duties. Government officials must make a conscious decision to obey the Constitution whether or not their acts can be challenged in a court of law and then must conform their actions to these principled determinations.